**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **GLEN ELLYN PHARMACY, INC.,**<br><br>    **Plaintiff,**<br><br>    v.<br><br>**PHARMA TECH SOLUTIONS, INC..,<br>SHASTA TECHNOLOGIES, LLC, and<br>JOHN DOES 1-10.,**<br><br>    **Defendants.** | **Case No.: 1:13-cv-07927**<br><br>Judge Ronald A. Guzman<br>**Mag. Judge Maria Valdez** |

**MEMORANDUM IN SUPPORT OF DEFENDANT PHARMA TECH SOLUTIONS,
INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

COMES NOW Defendant PHARMA TECH SOLUTIONS, INC. ("Pharma Tech") by and through its attorneys, Lathrop & Gage LLP, and moves for the dismissal of Plaintiff's First Amended Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. In support of the instant motion, Defendant Pharma Tech states as follows:

**I.    INTRODUCTION**

This case arises from the alleged transmission of a single, one-page facsimile on four separate days by Defendant Pharma Tech to Plaintiff. Pharma Tech is alleged to have the exclusive marketing and distribution rights for the Shasta GenStrip allegedly owned by SHASTA TECHNOLOGIES, LLC ("Shasta"). Plaintiff, GLEN ELLYN PHARMACY, INC., individually and as the purported representative of a class of allegedly similarly-situated persons, originally filed a five-count Class Action Complaint against Defendants Pharma Tech and Shasta, seeking recovery for harm allegedly caused as a result of the alleged transmission, by Defendant Pharma Tech, of unsolicited facsimiles that were purportedly sent to Plaintiff along with "at least 40

1

other persons in Illinois," allegedly without first receiving the recipients' expressed permission or invitation to send such communications. Plaintiff's original five-count Class Action Complaint alleged violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (hereinafter "TCPA"); violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2 (hereinafter "ICFA"); and state common law claims for conversion, private nuisance and trespass to chattels. *See* Doc. 1.

On January 24, 2014, Pharma Tech filed a motion to dismiss the state law claims (Counts II-V) of the original Complaint. In the face of this motion to dismiss, Plaintiff chose to drop its state common law claims and file a First Amended Complaint asserting only the TCPA and ICFA claims. *See* Doc. 47. However, Plaintiff's First Amended Complaint similarly fails as a matter of law. More particularly, Plaintiff now lacks standing to bring either its TCPA claim or its ICFA claim because Defendants' Offer of Judgment has mooted those claims. Inasmuch as Plaintiff rejected Defendants' Offer of Judgment—which provided more than full relief for what it could achieve in this litigation—there is no case or controversy and Plaintiff lacks standing to continue this lawsuit. In addition, Plaintiff's ICFA claim is fatally deficient because unsolicited advertisements simply do not fall under the purview of the ICFA. For these reasons, Pharma Tech respectfully request that the Court grant its motion and dismiss the First Amended Complaint with prejudice.

## II.  LEGAL STANDARD

Under Fed. R. Civ. P. 12(b)(1), the court "shall dismiss" a case when it appears that it does not have subject matter jurisdiction. Subject matter jurisdiction cannot be waived and a federal court is under a continuing duty to dismiss an action whenever it appears the court lacks such jurisdiction. Fed. R. Civ. P. 12(h)(3); *Buethe v. Britt Airlines, Inc.*, 749 F.2d 1235, 1238

(7th Cir. 1984) ("it is axiomatic that subject matter jurisdiction cannot be waived, and that courts must raise the issue *sua sponte* when it appears that subject matter jurisdiction is lacking"). Moreover, federal courts lack subject matter jurisdiction to consider moot claims. *Donnawell v. Hamburger*, No. 12-cv-9074, 2013 WL 3243093, at *4 (N.D. Ill. June 25, 2013). In considering a Rule 12(b)(1) motion, unlike the constraints attendant to a Rule 12(b)(6) analysis, the district court is not confined to the four corners of the complaint and may consider whatever evidence has been submitted on the issue. *Long v. Shorebank Dev. Corp.,* 182 F.3d 548, 554 (7th Cir.1999). In support, the moving party may first submit or rely upon "affidavits or any other evidence properly before the court." *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989) (internal citations omitted). Once that happens, it then "becomes necessary for the party opposing the motion to present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction." *Id.* A federal court is presumed to lack subject matter jurisdiction until plaintiff establishes otherwise. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994). Accordingly, here, Plaintiff bears the burden of proving the existence of subject matter jurisdiction.

Rule 12(b)(6) evaluates the legal sufficiency of a plaintiff's complaint. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In ruling on a motion to dismiss, all well-pleaded facts are accepted as true, and all reasonable inferences are drawn in the plaintiff's favor. *Hale v. Chu*, 614 F.3d 741, 744 (7th Cir. 2010) (internal citations omitted). But, the court "need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). The allegations in the complaint "must plausibly suggest that the plaintiff has a right to relief, raising that possibility

above a 'speculative level'; if they do not, the plaintiff pleads itself out of court." *Id.* (quoting *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)).

To withstand a motion brought under Rule 12(b)(6), plaintiffs must allege "more than an unadorned, the 'defendant-unlawfully-harmed-me' accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (U.S. 2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint that contains allegations that are "merely consistent with a defendant's liability … stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotations omitted); *see also Alam v. Miller Brewing Co.*, 709 F.3d 662, 665-666 (7th Cir. 2013).

Under the federal pleading requirements, Plaintiff need not plead all the elements of a *prima facie* case, but she must demonstrate more than just a conceivable claim. Plaintiff must, at the very least, plead a plausible claim. *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). "Only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* In order to do so, Plaintiff must assert *some* facts. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1085 (7th Cir. Ill. 2008). A "threadbare recital of the elements of a cause of action" is insufficient to state a claim under federal notice pleading requirements. *Iqbal*, 556 U.S. at 678.

**III. ARGUMENT**

    **A. Plaintiff Lacks Standing to Pursue its Claims in this Case Because Defendants' Offer of Judgment has Mooted Those Claims**

Plaintiff lacks standing because Defendants' Offer of Judgment mooted its claim. On February 13, 2014, respective counsel for Defendants served Plaintiff's counsel with an Offer of Judgment pursuant to Fed. R. Civ. P. 68. (Declaration of David V. Clark attached as Exhibit A). The offer totaled $15,000 on behalf of all defendants in addition to reasonable attorneys' fees as determined by the Court related solely to Plaintiff's individual claim and the injunction sought by Plaintiff barring Defendants from the further transmission of unsolicited fax advertising to

4

Plaintiff. *Id.* By email dated February 25, 2014, Plaintiff's counsel indicated that Plaintiff rejected Defendants' Offer of Judgment. Clark Decl., Exhibit B. Although the First Amended Complaint does not seek a sum certain in damages, there can be no doubt that Defendants' Offer of Judgment provides more relief than Plaintiff could reasonably expect to receive individually even if it pursued its case to judgment.[1]

In this case, Defendants' Offer of Judgment was made and rejected before any class was actually certified. Plaintiff did however, file a motion for class certification at the time it filed its original Complaint in the case. While the general practice in the Seventh Circuit has been to allow plaintiffs to avoid mooting by filing a motion for class certification before an offer of judgment is served, a recent Supreme Court decision reaffirms that the Seventh Circuit's rulings on this issue are inconsistent with the long-established Supreme Court precedent. *See Genesis Healthcare v. Symczyk*, 133 S.Ct. 1523 (2013).

For nearly 40 years, the Supreme Court has emphasized the actual certification decision (rather than a plaintiff's motion for class certification) as the threshold for a class to acquire independent legal standing. In *Sosna v. Iowa*, the Supreme Court evaluated the constitutionality

---

[1] Plaintiff's First Amended Complaint alleges that it received four (4) faxes from Defendants. Doc. 47, ¶¶ 10-13. If Plaintiff successfully proved its claim, Plaintiff would be entitled to no more than $1,500 per fax (for a total of $6,000) on his TCPA claim—and even then, only if Plaintiff was able to prove that Defendants' willfully or knowingly violated the TCPA. 47 U.S.C. § 227(b)(3)(C). Any additional actual damages under the IFCA for the "paper and ink or toner consumed" (Doc. 47, ¶ 28), would be negligible—and would certainly not amount to anything close to the $9,000 amount remaining in Defendants' Offer of Judgment. Inasmuch as Plaintiff will be unable to demonstrate that it suffered more than $15,000 in recoverable damages as the result of alleged transmission of a single, one-page facsimile on four separate days, Defendants have offered Plaintiff everything it could possibly recover in this action—and more. In addition, as noted above, Defendants' Offer of Judgment also provided that Defendants would pay "reasonable attorneys' fees as determined by the Court related solely to Glen Ellyn Pharmacy's claim, and the injunction sought by Glen Ellyn Pharmacy barring Defendants from the further transmission of unsolicited fax advertising to Glen Ellyn Pharmacy." Clark Decl., Ex. A.

of a residency requirement under Iowa divorce law. 419 U.S. 393, 394 (1975). Among the issues presented to the Court was whether the named plaintiff's claim was moot because she had satisfied the residency requirement during the pendency of the case. *Id.* The Court held that litigation was "saved from mootness only by the fact that **class certification occurred prior to** appellant's change in circumstance." *Id.* at 415 (emphasis added). The focus was not on when the plaintiff moved for class certification but on when actual certification occurred.

The Supreme Court had the same focus five years later in *U.S. Parole Commission v. Geraghty*, 445 U.S. 388 (1980). The Court held that a plaintiff may only litigate the class certification issue despite loss of his personal stake in the outcome of the litigation "[w]hen the claim on the merits is 'capable of repetition, yet evading review,'"[2] or when "certification of a class [occurred] prior to expiration of the named plaintiff's personal claim." *Id.* at 389. Again, the Supreme Court established that the key issue was whether the class certification decision had been made — not whether a motion had been filed.

Mooting decisions by the Seventh Circuit have applied the same logic. In *Holstein v. City of Chicago*, the court cited *Geraghty* in holding that "[i]f the district court **has certified the class** before the expiration of the plaintiff's claims, mootness is avoided." 29 F.3d 1145, 1147 (7th Cir. 1994) (emphasis added). The court affirmed dismissal on mootness grounds because the plaintiff "cannot claim the benefit of this exception to the mootness doctrine because the district court did not certify the class; indeed, [plaintiff] did not even move for class certification

---

[2] In this case, Plaintiff cannot reasonably argue that his claim is "capable of repetition, yet evading review." The Supreme Court recently made it absolutely clear that class claims seeking small-dollar damages do not fall within the "evading review" exception to the mootness doctrine. *See Genesis*, 133 S.Ct. at 1531 ("this doctrine has invariably focused on the fleeting nature of the challenged conduct giving rise to the claim, not on the defendant's litigation strategy"). Here, even if Defendants sent unsolicited faxes to Plaintiff in the future, Plaintiff could once again be made "whole" through the payment of damages and its claim for damages would "[remain] live until it is settled, judicially resolved, or barred by a statute of limitations." *Id*.

prior to the evaporation of his personal stake." *Id.* The court's statement regarding a motion for class certification is merely *dicta* — the dismissal was based on the fact that there had been no certification decision.[3]

It was in *Primax Recoveries, Inc. v. Sevilla,* 324 F.3d 544, 546–47 (7th Cir. 2003), that the Seventh Circuit went too far in expanding the exceptions to mootness in the class action context.[4] In *Primax*, the court held that a defendant cannot moot a case by making an offer to the named plaintiff "so long as a motion for class certification has been made and not ruled on." *Id*. Relying on this case and the *dicta* in cases such as *Greisz* and *Holstein*, various district courts in the Seventh Circuit have denied motions to dismiss on mootness grounds when the motion for class certification preceded the offer of full relief, and the Seventh Circuit most recently affirmed this approach in *Damasco,* stating (in *dicta*) that "[c]lass-action plaintiffs can move to certify the class at the same time that they file their complaint. The pendency of that motion protects a putative class from attempts to buy off the named plaintiffs." 662 F.3d at 896. But these cases are incorrect because they go beyond the standards set forth by the Supreme Court.

Last year, the Supreme Court reaffirmed that despite how courts in the Seventh Circuit and elsewhere have treated the mootness doctrine, the standards set forth in *Sonsa* and *Geraghty* should still govern. In *Genesis*, the Supreme Court upheld dismissal based on mooting in a

---

[3] The same can be said for the oft-cited decision of *Greisz v. Household Bank (Ill.), N.A.,* 176 F.3d 1012, 1015 (7th Cir. 1999). Although the court in that case stated that a defendant cannot moot a case by making an offer after a plaintiff moves to certify a class, that statement was merely *dicta* because in *Greisz*, class certification had already been denied. *Id.*

[4] The Seventh Circuit first expressed this theory in *Susman v. Lincoln Am. Corp.*, 587 F.2d 866, 869 (7th Cir.1978) ("We consider the motion for certification, while pending, as sufficiently, though provisionally, bringing the interests of class members before the court so that the apparent conflict between their interests and those of the defendant will avoid a mootness artificially created by the defendant by making the named plaintiff whole."), but that decision preceded *Geraghty*. The *Holstein* decision correctly realigned the focus on whether a class certification decision had been made.

7

collective action under the Fair Labor Standards Act. *Id.* The Supreme Court held that "[i]f an intervening circumstance deprives the plaintiff of a 'personal stake in the outcome of the lawsuit,' ***at any point during litigation***, the action can no longer proceed and must be dismissed as moot." *Id.* at 1528 (emphasis added). "[T]he mere presence of collective-action allegations in the complaint cannot save the suit from mootness once the individual claim is satisfied." *Id.* at 1529. As the Court observed, "essential to our decisions in *Sosna* and *Geraghty* was the fact that a putative class acquires an independent legal status ***once it is certified under Rule 23***." *Id.* at 1530 (emphasis added). Hence, while the Supreme Court recognized a narrow "relation back" rule where a representative's claim was mooted ***after certification*** (as was the case in *Sosna*), Article III standing limitations require dismissal where "[t]here is simply no certification decision to which respondent's claim could have related back." *Id.*

The Court in *Genesis* also clarified its earlier opinions that had cast doubt on the propriety of "buying off" or "picking off" Rule 23 class representatives. This so-called "buy-off problem" was the primary reason for the *Damasco* court's holding that class action plaintiffs can avoid having their claims mooted by moving to certify the class at the same time they file their complaint. *Damasco*, 662 F.3d at 896. However, the *Genesis* Court clarified that language in *Deposit Guaranty National Bank v. Roper*, 445 U.S. 326, 339 (1980), to the effect that such maneuvers "frustrate the objectives of class actions" was merely *dicta. See Genesis*, 133 S. Ct. at 1531-32; *see also Masters v. Wells Fargo Bank South Cent., N.A.*, 2013 WL 3713492, *6 (W.D.Tex. July 11, 2013) ("the *Genesis* Court rejected any reliance on *Roper*'s 'dicta' indicating a policy allowing defendants to 'pick off' named plaintiffs prior to class certification would frustrate the objectives of class actions.'") (internal quotation marks and citations omitted). Rather, the crucial inquiry of *Roper* was whether the plaintiff possessed "a continuing personal

economic stake in the litigation, even after the defendant's offer of judgment." *Id.* at 1532 (*citing Roper*, 445 U.S. at 336). Here, as in *Genesis* and *Masters*, Defendants' Offer of Judgment has provided complete relief on Plaintiff's individual claims and Plaintiff has "no personal interest in representing putative, unnamed claimants, nor any other continuing interest that would preserve [its] suit from mootness." *Id.*

While Defendants' attempt to settle Plaintiff's individual claim here through the Offer of Judgment would have the collateral effect of the putative class members in this action not having their claims resolved in Plaintiff's case, the Court in *Genesis* dismissed this concern, noting:

> such putative plaintiffs remain free to vindicate their rights in their own suits. They are no less able to have their claims settled or adjudicated following respondent's suit than if her suit had never been filed at all.

*Id.* at 1531. Thus, the Court's reasoning in *Genesis* completely undercuts the *Damasco* court's ruling that the "buy-off problem" is of sufficient concern to require a solution whereby class action plaintiffs can avoid having their claims mooted by moving to certify the class at the same time they file their complaint.

Nor does the fact that *Genesis* involved an FSLA "collective action," and not a Rule 23 class action, in any way lessen the precedential effect or applicability of the holdings in *Genesis* to cases like the instant one in which class action certification is sought. The Supreme Court's guidance in *Genesis* on the limitations of *Roper* and *Geraghty* is tethered to the status of the named representative's substantive claim and does not turn on whether the case was brought as a class or representative action. It makes no difference whether the claim is a class action or a representative action, either the representative has a continuing interest in the outcome of the litigation or he does not. If so, the case may continue (*e.g.* Roper), if not the case must be dismissed (e.g. *Genesis*).

There is nothing unique about Rule 23 that gives representatives a "personal stake" in the outcome of a class action that is not also apparent in the "collective action" context. Indeed, as the Fifth Circuit has observed, no such differences exist: "[t]he status of a case as being an "opt in" or "opt out" class action has no bearing on whether a defendant can unilaterally moot a plaintiff's case through a Rule 68 offer of judgment." *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 920 (5th Cir. 2008). Hence, a defendant in the Rule 23 context is entitled to dismissal of a moot claim just as surely as it would be in the FLSA context.

The Seventh Circuit's attempt to expand this analysis to allow a plaintiff to avoid mooting simply by ***moving*** for class certification is not supported by the relevant Supreme Court case law or common sense. *Genesis* does away with the arbitrary distinction between cases where a plaintiff "wins the race" and files a place-holder certification motion (with the complaint or otherwise) and those where a defendant acts first in issuing the Rule 68 offer of judgment. The determinative issue is not whether a certification motion has been filed, but rather whether a certification determination has been obtained. It is entirely reasonable that a class certified by the court after a rigorous analysis should have independent legal standing. But a plaintiff should not be able to artificially create legal standing for a class of individuals that may never be certified simply by filing a cursory motion for class certification that may be entirely without merit. The rulings in *Sosna*, *Geraghty*, and *Genesis* indicate that the Supreme Court recognized this important distinction, and this Court should follow suit.[5]

---

[5] There exists an exception to the rule that district courts are bound by the law of their own circuit when an intervening Supreme Court case "undercut[s] the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable." *Pulido v. Salazar*, 07-cv-5682, 2008 WL 906543, at *3 (C.D. Cal. Mar. 31, 2008) (citing *Miller v. Gammie,* 335 F.3d 889, 899-900 (9th Cir.2003)). Indeed, courts in this District have acknowledged that a "District Judge is free to disregard circuit precedent that is contrary to the rule pronounced by the court possessing final authority." *U.S. E.E.O.C. v. Sidley Austin Brown &*

In this case, Plaintiff's claim was mooted by Defendants' offers of judgment before a decision on class certification. Because the class did not have "independent legal status" before the offers of judgment were made, Plaintiff's case must now be dismissed

### B. In Addition, Plaintiff's IFCA Claim Must be Dismissed for Failure to State a Claim

Count II of Plaintiff's Complaint should be dismissed for the additional reason that an unsolicited advertisement does not fall under the purview of the ICFA, and it fails to state a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2. The Illinois Consumer Fraud Act provides:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice describe in Section 2 of the 'Uniform Deceptive Trade Practices Act'…in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

815 ILCS 505/2.

The Illinois legislature has demonstrated that the sending of a single, one page facsimile does not come within the purview of the ICFA. 815 ILCS 505/2Z. The ICFA does not state that a violation of the TCPA or any other Illinois statute that prohibits fax advertising constitutes a violation of the ICFA. *Id.* In contrast, Section 505/2Z of the ICFA sets forth other Acts which,

---

*Wood LLP*, 406 F. Supp. 2d 991, 996 (N.D. Ill. 2005), *aff'd sub nom. E.E.O.C. v. Sidley Austin LLP*, 437 F.3d 695 (7th Cir. 2006). To proceed otherwise would be to ignore the Article III hierarchical system under which we operate. *Id.* "A district judge should not wait for a signal from the Court of Appeals before following the Supreme Court's rulings." *Id.* As such, this Court is duty bound to interpret and apply the law as it currently exists, and the Supreme Court's recent opinion in *Genesis* operates in such a way as to undercut the reasoning set forth in this circuit's prior precedent in *Damasco*.

when violated, constitute an unlawful practice within the meaning of the ICFA, such as violation of the Telephone Solicitations Act that prohibits unsolicited telephone advertising. 815 ILCS 505/2Z. Significantly, the legislature failed to include an alleged violation of the TCPA, or the sending of an allegedly unauthorized facsimile, in Section 505/2Z as an act that violates the ICFA. *Id.* Therefore, under the doctrine of *expressio unius est exclusion alterius*, there is no cause of action under the ICFA for unsolicited fax advertising. *See People Ex Rel. Daley v. Grady*, 192 Ill. App. 3d 330, 332 (1st Dist. 1989). This argument is further bolstered by the fact that attempts to pass legislation that would amend 815 ILCS 505/2Z and make unsolicited advertising a violation of the ICFA have been rejected by the State Legislature. *See* H.B. 5580, 92nd Gen. Assem. (Ill. 2002); H.B. 2718, 91st Gen. Assem. (Ill. 1999). Thus, Plaintiff is asking the Court to usurp the legislative function to amend the ICFA through judicial interpretation of the ICFA.

Even disregarding the legislature's intent on not specifically including unsolicited advertising as a violation of the ICFA, Plaintiff has not properly pleaded a valid cause of action under the ICFA. To state a claim under the ICFA, the plaintiff must allege the following elements: (1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff proximately caused by the deception. *Oliveria v. Amoco Oil Co.,* 201 Ill.2 d 134, 149 (2002), *Connick v. Suzuki Motor Co., Ltd.,* 174 Ill. 2d 482, 501 (1996), *Western Ry. Devices Corp. v. Lusida Rubber Products, Inc.*, 2006 U.S. Dist. LEXIS 43867 at * 10 (N.D. Ill. Jun. 13, 2006).

The Court must determine whether the sender's conduct is "unfair" or "deceptive" to the recipient. *See Western Ry.,* 2006 U.S. Dist., LEXIS 43867 at *10. In doing so, the Court

considers the following three factors: (1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; and (3) whether it causes substantial injury to consumers. *Id.* (citing *Robinson v. Toyota Motor Credit Corp.,* 775 N.E.2d 951, 960, 201 Ill.2d 403, 416-417 (2002)). Furthermore, in order to maintain a claim for violation of the ICFA, Plaintiff's complaint must state with particularity and specificity the unfair or deceptive manner of Defendant's acts or practices, and the failure to make such averments requires dismissal of the complaint. *Robinson,* 201 Ill. 2d at 419.

The sending of a one-page allegedly unsolicited advertisement via facsimile is not an unfair course of conduct as contemplated by the ICFA, as it does not constitute immoral, oppressive, or unscrupulous practice and does not cause substantial injury to consumers. *See Rossario's,* 443 F. Supp. 2d at 979 (holding that "[o]f the three *Robinson* identified factors, only the 'public policy' consideration is met, and the patent inapplicability of the other two factors to Paddock's one-page fax advertisement heavily outweighs that one element…"). In *Robinson*, the Illinois Supreme Court affirmed dismissal of the ICFA claims on grounds that the plaintiffs failed to describe in their complaint how defendant's practices, including early termination, capitalized costs, GAP charges, double penalties, and auction, transportation, and reconditioning fees, were so unfair to allow a recovery. *Robinson*, 201 Ill. 2d at 420. The court further stated that bare assertion of unfairness without describing in what manner the conduct is oppressive is insufficient to state a cause of action. *Id.* at 421.

Similarly, Plaintiff has not met its burden of alleging specific and adequate facts to demonstrate unfair or deceptive practices on the part of Defendants. There is no allegation, and no evidence, to support such an act or practice exists. If anything, there was a minimal disruption of Plaintiff's business, a minimal intrusion into Plaintiff's use of time and a negligible

use of Plaintiff's paper, ink and toner. The practice of sending a one-page fax advertisement simply "does not rise to the level of oppression envisioned by the drafters of the ICFA". *Robinson*, 201 Ill. 2d at 421(internal citations omitted). The practice does not constitute oppressive behavior because the burden imposed by the sending of a one-page facsimile can hardly be characterized as unreasonable, nor does it constitute immoral, oppressive or unscrupulous behavior. *Id.* In the words of Judge Shadur, it amounts to nothing more than a "minimal disruption of one's business." *Id.*, *see also Rossario's,* 443 F. Supp. 2d at 979.

Furthermore, the sending of a single one-page document cannot be shown to have caused "substantial" harm to Plaintiff or others who are alleged to have received the same fax. *See Rossario's,* 443 F. Supp. 2d at 979; *Western Ry.,* 2006 U.S. Dist. LEXIS 43867 at *16. To state a claim for recovery under ICFA, a plaintiff must show that the defendant's violation of ICFA proximately caused "actual damage," as distinguished from "nominal damages." Plaintiff has not met this burden because even without quantifying the amount of alleged damage, Plaintiff's receipt of a one-page fax could only be trivial, costing not more than a few pennies. *See Garrett v. Rangle Dental Laboratory*, 2010 U.S. Dist. LEXIS 78175 at *3 (N.D. Ill. Aug. 3, 2010)(holding that fax-blasting did not cause "substantial injury" by ICFA standards).

Plaintiff has not, and cannot, plead facts to demonstrate that sending a single-page facsimile is immoral, unethical, oppressive or unscrupulous conduct or causes a "substantial" injury warranting protection under the ICFA. Clearly, the Illinois legislature was not concerned with the transmission of facsimiles when it drafted the ICFA as demonstrated by its notable omission among violations specified under Section 505/2Z. This is likely because the act of sending a single, one-page fax advertisement does not constitute immoral, oppressive, or unscrupulous behavior. Further, any miniscule monetary loss caused by the use of a single sheet

of paper with toner from the office fax machine cannot be found to have caused "substantial" injury or damage. The sending of a single one-page unsolicited facsimile simply does not constitute an *unreasonable* burden upon a consumer, nor does it cause a substantial injury insofar as the alleged damages are *de minimis*, in that as a single transmission only has a negligible impact on the fax machine's paper and ink. Simply put, the act of sending an allegedly unsolicited one-page facsimile does not rise to the level of oppression contemplated by the ICFA. As such, Plaintiff has failed to state a claim as a matter of law under the ICFA and Count II should be dismissed with prejudice.

## IV. CONCLUSION

WHEREFORE, Defendant PHARMA TECH SOLUTIONS, INC. respectfully requests that this Honorable Court enter an order dismissing Plaintiff's First Amended Complaint with prejudice pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

Dated: March 14, 2014

Respectfully submitted,

By: /s/ David V. Clark
David V. Clark (Admitted *pro hac vice*)
Robin E. Stewart (Admitted *pro hac vice*)
2345 Grand Blvd., Suite 2400
Kansas City, MO 64108
Phone: (816) 292-2000
Fax: (816) 292-2000

Bryan K. Clark (6296090
LATHROP & GAGE LLP
155 North Wacker Drive, Suite 3050
Chicago IL, 60606
Phone: (312) 920-3300
Fax: (312) 920-3301

ATTORNEYS FOR DEFENDANT,
PHARMA TECH SOLUTIONS, INC.

## **CERTIFICATE OF SERVICE**

      I, David V. Clark, hereby certify that on this 14th day of March, 2014, a true and correct copy of the foregoing was served by CM/ECF to the parties registered with the Court's CM/ECF system.

                                                */s/ David V. Clark*

21373728v1